# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YORON COHEN,<br><br>          Plaintiff,<br><br>    v.<br><br>JONES LANG LASALLE IP, INC.,<br>PETER RIGUARDI,<br>and STEPHEN SCHLEGEL,<br><br>          Defendants. | No. 17-cv-03471-DLC<br><br>**STIPULATION AND ORDER** |

The Parties to this action, by their undersigned counsel, hereby stipulate and agree:

1.       Defendants consent to the amendment of the complaint in the form annexed as Exhibit A, to allow for the substitution of Jones Lang LaSalle Americas, Inc. in place of Jones Lang LaSalle IP, Inc. as a defendant in this action.  A comparison of the amended complaint to the original complaint showing changes is annexed as Exhibit B.

2.       Defendants accept electronic filing of the amended complaint as good and sufficient service pursuant to the Federal Rules of Civil Procedure.

3.       Defendants' Answer to the original complaint (see Dkt. No. 17) shall be deemed their Answer to the Amended Complaint, provided that Defendants' response to Paragraph 5 of the Amended Complaint shall be:  "Deny the allegations in Paragraph 5, except as follows: Defendants admit that Jones Lang LaSalle Americas, Inc. is a Maryland corporation that conducts business in Chicago, Illinois.

{00085083;2}

Dated:  New York, New York
       October 13, 2017

Respectfully submitted,


By: */s/ Charles Harder*
Charles J. Harder, Esq.
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel. (424) 203-1600


By: */s/ Anthony Harwood*
Anthony J. Harwood, Esq.
HARDER MIRELL & ABRAMS LLP
488 Madison Avenue, Eighteenth Floor
New York, NY 10022
Tel. (212) 799-1400
*Counsel for Plaintiff*


By: */s/ Jason D. Burns*
Jason D. Burns
101 Park Avenue
New York, NY 10178
Tel. (212) 309-6000
*Counsel for Defendants*


**SO ORDERED:**


_____
Denise L. Cote, U.S.D.J.

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YORON COHEN,<br><br>     Plaintiff,<br><br>  v.<br><br>JONES LANG LASALLE AMERICAS,<br>INC., PETER RIGUARDI,<br>and STEPHEN SCHLEGEL,<br><br>     Defendants. | No. 17-cv-03471-DLC<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yoron Cohen, by and through his undersigned attorneys, for his Amended Complaint against defendants Jones Lang Lasalle Americas, Inc., Peter Riguardi and Stephen Schlegel (collectively, "Defendants") alleges as follows:

### SUMMARY OF THE ACTION

1. Plaintiff Yoron Cohen ("Plaintiff") is one of the top commercial real estate brokers in New York City, and has been for many years. Until December 2016, he was employed for six years as a broker at Defendant Jones Lang LaSalle Americas, Inc. ("JLL") and performed exceptionally well throughout that time. JLL discriminated against Cohen because Cohen is over the age of 60, and JLL favored younger brokers and its managers repeatedly expressed that sentiment and acted on it. Specifically, JLL made discriminatory statements that caused Plaintiff's team at JLL to lose morale, which caused members of the team to look for other opportunities in other companies. JLL's discriminatory harassment lasted over one and half years. Plaintiff and his team requested a solid extension of Plaintiff's contract with JLL and

repeatedly was rejected.  JLL made it clear that the reason Plaintiff's contract extension was denied was due to Plaintiff's age, not his job performance.

2.     Plaintiff therefore left JLL with two other top performing JLL brokers (both of whom also are over or near the age of 60, have performed exceptionally well, and were not valued at JLL because of their age), and all three joined Colliers International Capital Markets ("Colliers").

3.     Defendants apparently felt spited that Plaintiff and his partners left JLL for Colliers, and they spoke to a reporter at *The Real Deal* which covers commercial real estate industry news, and made false and defamatory statements about Plaintiff and his partners.  In particular, Defendants stated that Plaintiff and his partners underperformed at JLL and were given an ultimatum in early 2016 to improve their numbers or be required to leave JLL.  Both statements by Defendants to the reporter were and are completely false:  Plaintiff and his partners never underperformed at JLL and were never given any such ultimatum by JLL.  The false statements by Defendants, published by *The Real Deal*, have caused substantial harm to Plaintiff and his partners.  Plaintiff seeks compensatory damages, punitive damages and a permanent injunction against further defamatory statements by Defendants.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

4.     Plaintiff is an individual residing in Dobbs Ferry, New York and with his principal place of business in New York City, New York.

5.     Defendant Jones Lang LaSalle Americas, Inc. ("JLL") is a Maryland corporation with its principal place of business in Chicago, Illinois.  The present action arose out of its actions and extensive contacts in New York City.

{00085080;2}                                      2

6.      On information and belief, Defendant Peter Riguardi ("Riguardi") is an individual residing in the State of New Jersey with his principal place of business in New York City, New York, and is the "President of the Tri-State Region" of JLL with responsibilities for JLL's extensive operations in New York, New Jersey and Connecticut.

7.      On information and belief, Defendant Stephen Schlegel ("Schlegel") is an individual residing in and with his principal place of business in New York City, New York, and is the "Marketing Director of the Tri-State Region" of JLL with responsibilities for JLL's extensive marketing operations throughout New York, New Jersey and Connecticut.

8.      This Court has personal jurisdiction over Defendants because, among other things, each of them transacts extensive business in New York State and committed tortious acts in New York State, and the claims alleged herein arise out of such conduct.

9.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1376.  Plaintiff gave timely notice of suit to the EEOC more than 60 days prior to filing this Complaint.  On or about May 1, 2017, Plaintiff received a notice of right to sue from the EEOC.

10.      Venue is proper in this district because a substantial part of the events occurred herein.

11.      Plaintiff Yoron Cohen is the Vice Chairman of Colliers' New York office. Plaintiff is a real estate broker with decades of experience in the purchase, sale, and financing of commercial properties in New York.  Plaintiff has brokered the sale of numerous hundred-million and billion dollar properties during the course of his career.

12.     Prior to being hired by Colliers, Plaintiff worked at JLL performing the same type of work.  While working for JLL Plaintiff brokered the sale of a number of major, valuable commercial buildings in Manhattan.

13.     Plaintiff is 63 years old, and one of the top commercial real estate brokers in New York.

14.     On information and belief, when Plaintiff was at JLL, his employers embarked on a scheme to disfavor him, and three other brokers also were over or near 60 years of age at JLL, in favor of younger brokers.  This scheme included, among other things: making disparaging statements about Plaintiff and his partners to their subordinates, including that they were "old", "tired" and "checked out"; repeatedly stating that they preferred younger brokers; telling Plaintiff's subordinates that Plaintiff would not be signed to a long-term employment contract because of his age; moving Plaintiff's team to less desirable office space and dispersing them throughout the office to inhibit their ability to collaborate effectively; and improperly withholding bonus payments to Plaintiff's team.  As a result of Defendants' scheme, at least one staff member working under Plaintiff's supervision left JLL and Plaintiff's team was completely undermined and demoralized.  Defendants thus created a hostile working environment and changed the terms and conditions of Plaintiff's employment due to his age.

15.     Defendants also further discriminated against Plaintiff by not offering him, and three other brokers over or near the age of 60, five year renewals of their employment contracts, instead employing them at will, whereas, on information and belief, younger workers at JLL were offered fixed term contract extensions.

16.     All four brokers eventually left JLL.  Two of the three other brokers who left JLL, Richard Baxter and Scott Latham, went to Colliers with Plaintiff.  The fourth broker started his

own firm where, on information and belief, he performed competently and professionally as a commercial real estate broker.

17.     Defendants' age discrimination against Plaintiff continued even after Plaintiff left JLL and went to Colliers.  Defendants offered generous compensation to some of the younger members of Plaintiff's team, for the purposes of achieving Defendants' goal of a younger workforce, forcing Plaintiff and Colliers to incur additional expense hiring and training replacement team members, and interfering with Plaintiff's performance of his duties at Colliers by denying him the opportunity to bring his team members with him.

18.     On information and belief, after Plaintiff, Baxter, and Latham committed to moving to Colliers, Defendants spoke to a reporter for *The Real Deal*, a publication that covers the New York real estate industry and is widely read by those in the industry.

19.     The result was a story, "Inside the exodus of JLL's I-sales quartet", published by *The Real Deal* on or about January 6, 2017 (the "Defamatory Article").  The Defamatory Article contained on the record quotes from Riguardi, representing JLL, about Plaintiff and his partners, including a statement implying that their career would be ending soon due to old age: "We wish the guys good luck and hope they can finish their careers at Colliers."   The Defamatory Article contained false and defamatory statements of and concerning Plaintiff, sourced to high level sources in JLL.  On information and belief, these sources included Riguardi and Schlegel.  The defamatory statements included:

        a.  That "high-level sources at JLL say the brokers [Plaintiff, Baxter, and Latham] were underperforming";

b.  That "at a meeting in January 2016, Baxter, Latham, [Plaintiff] and their colleague Jon Caplan were informed by management that they were not doing enough to justify their lofty perches at JLL"; and

c.  That "[t]he brokerage's investment sales division was well behind the sharks at Eastdil Secured and CBRE and, according to this source, the quartet was given an ultimatum in September: step it up, or leave in December upon the expiration of their contracts".

20.    The statements attributed to JLL in the Defamatory Article are false and defamatory.  In fact, Plaintiff continued to perform at a high level throughout his tenure at JLL. There was no meeting with management in which Plaintiff was told to improve his performance.

21.    The statements in the Defamatory Article were made of and concerning the Plaintiff.

22.    The statements in the Defamatory Article injured Plaintiff in his trade or profession and were thus defamatory *per se*.  At Colliers, Plaintiff continues to suffer harm from Defendants' conduct, as it has created a perception that Plaintiff and Baxter and Latham are losers and has interfered with Plaintiff's efforts to put a new team together.

## FIRST CAUSE OF ACTION

### (Slander)

23.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

24.    The Defamatory Articles contain false statements, made by Defendants to *The Real Deal*'s reporter with the intent that they be published and widely disseminated.

25.     The false statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community and to deter others from associating or dealing with Plaintiff.

26.     The statements made by Defendants were defamatory *per se*.

27.     Plaintiff has been seriously damaged as a direct and proximate cause of the falsity of the statements made by Defendants, in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business and duties as a real estate broker.  Because the statements were widely disseminated on the Internet, they were also likely and intended to hold the Plaintiff up to ridicule and to damage his social and business relationships.

28.     Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Age Discrimination Under Federal Law)

29.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 28 as though fully set forth herein.

30.     Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

31.     As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Age Discrimination Under New York State Human Rights Law)

32.　Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 31 as though fully set forth herein.

33.　Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

34.　As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

35.　Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Age Discrimination Under New York City Human Rights Law)

36.　Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 35 as though fully set forth herein.

37.　Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

38.　As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

39.　Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

a.　Awarding damages to Plaintiff in an amount to be determined at trial;

b.       Awarding punitive damages to Plaintiff in an amount to be determined at

trial;

c.       Awarding Plaintiff his costs of suit including reasonable attorney's fees;

and

d.       Awarding Plaintiff such other and further relief as the Court deems just

and proper.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury.

Dated: October 13, 2017                            Respectfully submitted,


By: */s/ Charles Harder*
Charles J. Harder, Esq.
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel. (424) 203-1600


By: */s/ Anthony Harwood*
Anthony J. Harwood, Esq.
HARDER MIRELL & ABRAMS LLP
488 Madison Avenue, Eighteenth Floor
New York, NY 10022
Tel. (212) 799-1400

*Counsel for Plaintiff*

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YORON COHEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>JONES LANG LASALLE ~~IP~~AMERICAS, INC., PETER RIGUARDI, and STEPHEN SCHLEGEL,<br><br>                    Defendants. | No. 17-cv-03471-dlc<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yoron Cohen, by and through his undersigned attorneys, for his Amended Complaint against defendants Jones Lang Lasalle ~~IP~~Americas, Inc., Peter Riguardi and Stephen Schlegel (collectively, "Defendants") alleges as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff Yoron Cohen ("Plaintiff") is one of the top commercial real estate brokers in New York City, and has been for many years.  Until December 2016, he was employed for six years as a broker at Defendant Jones Lang LaSalle ~~IP~~Americas, Inc. ("JLL") and performed exceptionally well throughout that time.  JLL discriminated against Cohen because Cohen is over the age of 60, and JLL favored younger brokers and its managers repeatedly expressed that sentiment and acted on it.  Specifically, JLL made discriminatory statements that caused Plaintiff's team at JLL to lose morale, which caused members of the team to look for other opportunities in other companies. JLL's discriminatory harassment lasted over one and half years.  Plaintiff and his team requested a solid extension of Plaintiff's contract with

{00085082;1}                                    1

JLL and repeatedly was rejected.  JLL made it clear that the reason Plaintiff's contract extension was denied was due to Plaintiff's age, not his job performance.

2.      Plaintiff therefore left JLL with two other top performing JLL brokers (both of whom also are over or near the age of 60, have performed exceptionally well, and were not valued at JLL because of their age), and all three joined Colliers International Capital Markets ("Colliers").

3.      Defendants apparently felt spited that Plaintiff and his partners left JLL for Colliers, and they spoke to a reporter at *The ~~New~~Real Deal* which covers commercial real estate industry news, and made false and defamatory statements about Plaintiff and his partners.  In particular, Defendants stated that Plaintiff and his partners underperformed at JLL and were given an ultimatum in early 2016 to improve their numbers or be required to leave JLL.  Both statements by Defendants to the reporter were and are completely false:  Plaintiff and his partners never underperformed at JLL and were never given any such ultimatum by JLL.  The false statements by Defendants, published by *The Real Deal*, have caused substantial harm to Plaintiff and his partners.  Plaintiff seeks compensatory damages, punitive damages and a permanent injunction against further defamatory statements by Defendants.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

4.      Plaintiff is an individual residing in Dobbs Ferry, New York and with his principal place of business in New York City, New York.

5.      Defendant Jones Lang LaSalle ~~IP~~Americas, Inc. ("JLL") is a ~~Delaware~~Maryland corporation with its principal place of business in Chicago, Illinois.  The present action arose out of its actions and extensive contacts in New York City.

6.      On information and belief, Defendant Peter Riguardi ("Riguardi") is an individual residing in the State of New Jersey with his principal place of business in New York City, New York, and is the "President of the Tri-State Region" of JLL with responsibilities for JLL's extensive operations in New York, New Jersey and Connecticut.

7.      On information and belief, Defendant Stephen Schlegel ("Schlegel") is an individual residing in and with his principal place of business in New York City, New York, and is the "Marketing Director of the Tri-State Region" of JLL with responsibilities for JLL's extensive marketing operations throughout New York, New Jersey and Connecticut.

8.      This Court has personal jurisdiction over Defendants because, among other things, each of them transacts extensive business in New York State and committed tortious acts in New York State, and the claims alleged herein arise out of such conduct.

9.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1376.  Plaintiff gave timely notice of suit to the EEOC more than 60 days prior to filing this Complaint.  On or about May 1, 2017, Plaintiff received a notice of right to sue from the EEOC.

10.     Venue is proper in this district because a substantial part of the events occurred herein.

11.     Plaintiff Yoron Cohen is the Vice Chairman of Colliers' New York office. Plaintiff is a real estate broker with decades of experience in the purchase, sale, and financing of commercial properties in New York.  Plaintiff has brokered the sale of numerous hundred-million and billion dollar properties during the course of his career.

12.     Prior to being hired by Colliers, Plaintiff worked at JLL performing the same type of work.  While working for JLL Plaintiff brokered the sale of a number of major, valuable commercial buildings in Manhattan.

13.     Plaintiff is 63 years old, and one of the top commercial real estate brokers in New York.

14.     On information and belief, when Plaintiff was at JLL, his employers embarked on a scheme to disfavor him, and three other brokers also were over or near 60 years of age at JLL, in favor of younger brokers.  This scheme included, among other things: making disparaging statements about Plaintiff and his partners to their subordinates, including that they were "old", "tired" and "checked out"; repeatedly stating that they preferred younger brokers; telling Plaintiff's subordinates that Plaintiff would not be signed to a long-term employment contract because of his age; moving Plaintiff's team to less desirable office space and dispersing them throughout the office to inhibit their ability to collaborate effectively; and improperly withholding bonus payments to Plaintiff's team.  As a result of Defendants' scheme, at least one staff member working under Plaintiff's supervision left JLL and Plaintiff's team was completely undermined and demoralized.  Defendants thus created a hostile working environment and changed the terms and conditions of Plaintiff's employment due to his age.

15.     Defendants also further discriminated against Plaintiff by not offering him, and three other brokers over or near the age of 60, five year renewals of their employment contracts, instead employing them at will, whereas, on information and belief, younger workers at JLL were offered fixed term contract extensions.

16.     All four brokers eventually left JLL.  Two of the three other brokers who left JLL, Richard Baxter and Scott Latham, went to Colliers with Plaintiff.  The fourth broker started his

own firm where, on information and belief, he performed competently and professionally as a commercial real estate broker.

17.    Defendants' age discrimination against Plaintiff continued even after Plaintiff left JLL and went to Colliers.  Defendants offered generous compensation to some of the younger members of Plaintiff's team, for the purposes of achieving Defendants' goal of a younger workforce, forcing Plaintiff and Colliers to incur additional expense hiring and training replacement team members, and interfering with Plaintiff's performance of his duties at Colliers by denying him the opportunity to bring his team members with him.

18.    On information and belief, after Plaintiff, Baxter, and Latham committed to moving to Colliers, Defendants spoke to a reporter for *The Real Deal*, a publication that covers the New York real estate industry and is widely read by those in the industry.

19.    The result was a story, "Inside the exodus of JLL's I-sales quartet", published by *The Real Deal* on or about January 6, 2017 (the "Defamatory Article").  The Defamatory Article contained on the record quotes from Riguardi, representing JLL, about Plaintiff and his partners, including a statement implying that their career would be ending soon due to old age: "We wish the guys good luck and hope they can finish their careers at Colliers."   The Defamatory Article contained false and defamatory statements of and concerning Plaintiff, sourced to high level sources in JLL.  On information and belief, these sources included Riguardi and Schlegel.  The defamatory statements included:

> a.  That "high-level sources at JLL say the brokers [Plaintiff, Baxter, and Latham] were underperforming";

b.  That "at a meeting in January 2016, Baxter, Latham, [Plaintiff] and their colleague Jon Caplan were informed by management that they were not doing enough to justify their lofty perches at JLL"; and

c.  That "[t]he brokerage's investment sales division was well behind the sharks at Eastdil Secured and CBRE and, according to this source, the quartet was given an ultimatum in September: step it up, or leave in December upon the expiration of their contracts".

20.  The statements attributed to JLL in the Defamatory Article are false and defamatory.  In fact, Plaintiff continued to perform at a high level throughout his tenure at JLL. There was no meeting with management in which Plaintiff was told to improve his performance.

21.  The statements in the Defamatory Article were made of and concerning the Plaintiff.

22.  The statements in the Defamatory Article injured Plaintiff in his trade or profession and were thus defamatory *per se*.  At Colliers, Plaintiff continues to suffer harm from Defendants' conduct, as it has created a perception that Plaintiff and Baxter and Latham are losers and has interfered with Plaintiff's efforts to put a new team together.

## FIRST CAUSE OF ACTION

### (Slander)

23.  Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

24.  The Defamatory Articles contain false statements, made by Defendants to *The Real Deal*'s reporter with the intent that they be published and widely disseminated.

25.     The false statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community and to deter others from associating or dealing with Plaintiff.

26.     The statements made by Defendants were defamatory *per se*.

27.     Plaintiff has been seriously damaged as a direct and proximate cause of the falsity of the statements made by Defendants, in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business and duties as a real estate broker.  Because the statements were widely disseminated on the Internet, they were also likely and intended to hold the Plaintiff up to ridicule and to damage his social and business relationships.

28.     Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Age Discrimination Under Federal Law)

29.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 28 as though fully set forth herein.

30.     Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

31.     As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Age Discrimination Under New York State Human Rights Law)

32.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 31 as though fully set forth herein.

33.     Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

34.     As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

35.     Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Age Discrimination Under New York City Human Rights Law)

36.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 35 as though fully set forth herein.

37.     Plaintiff was subjected to unequal terms and conditions of employment as a result of his age.

38.     As a result of Defendants' age discrimination, Plaintiff has suffered damages in an amount to be proven at trial.

39.     Defendants' conduct was vile, malicious, intentional, oppressive, and fraudulent, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

        a.     Awarding damages to Plaintiff in an amount to be determined at trial;

b.      Awarding punitive damages to Plaintiff in an amount to be determined at

trial;

c.      Awarding Plaintiff his costs of suit including reasonable attorney's fees;

and

d.      Awarding Plaintiff such other and further relief as the Court deems just

and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated: ~~May 9, 2017~~October 13, 2017                                    Respectfully
submitted,


By:_ */s/ Charles Harder*_____
Charles J. Harder, Esq.
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel. (424) 203-1600


By:_ */s/ ~~Mark Rosenberg~~Anthony Harwood*_
~~Mark~~Anthony J. ~~Rosenberg~~Harwood, Esq.
~~TARTER KRINSKY & DROGIN~~HARDER

~~MIRELL & ABRAMS~~ LLP                        ~~1350 Broadway~~
488 Madison Avenue, Eighteenth Floor
New York, NY ~~10018~~10022
Tel. (212) ~~216   1127~~799-1400

*Counsel for Plaintiff*