**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YORON COHEN,<br><br>                    Plaintiff,<br><br>      v.<br><br>JONES LANG LASALLE AMERICAS, INC., PETER RIGUARDI, and STEPHEN SCHLEGEL,<br><br>                Defendants. | No. 17-CV-2113<br><br>**STIPULATED DOCUMENT PRODUCTION PROTOCOL ORDER** |

It is hereby ORDERED, for good cause shown, that the following procedures and protocols set forth in this Stipulated Document Production Protocol Order (the "Protocol") shall govern the production of documents and electronically stored information ("ESI") in the above-captioned case.

1. **General**

    A.    The Parties shall take reasonable steps to comply with the procedures set forth in this Protocol.

    B.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Protocol shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

{00085961;1}

C.      This Protocol shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

## 2.      DEFINITIONS

A.      The Parties adopt and incorporate herein the Uniform Definitions set forth in Rule 26.3 of the Local Rules.

B.      "Party" means a named party to this case.  "Parties" collectively refers to two or more named parties to this case.

C.      "Electronically Stored Information" or "ESI" has a meaning consistent with Fed. R. Civ. P. 34(a).

D.      "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(l) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

E.      "Native Format" means the format of ESI in the application in which such ESI was originally created.

F.      "Producer" or "Producing Party" means a Party who produces information or documents via the discovery process in this case.

G.      "Recipient" or "Receiving Party" means a Party who receives information or documents via the discovery process in this case.

H.      "Responsive Document(s)" means any document that is responsive to any discovery request served on the Producing Party in this action or that the Producing Party has been ordered to produce by the Court.

I.      "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

J.      "Production Volume" means a unique alpha-numeric volume name representing a range of Documents (*i.e.*, batch) sent to the Receiving Party by the Producing Party.  The Production Volume is named consecutively beginning with "[Party Name]001" and continuing sequentially until all documents have been produced.

K.      "Defendants" collectively refers to defendants Jones Lang LaSalle Americas, Inc., Peter Riguardi and Stephen Schlegel.

## 2.      SCOPE

A.      The procedures and protocols set forth in this Protocol shall govern the production of Responsive Documents between the Parties in this case.  Any practice or procedure set forth herein may be varied by written agreement of the Parties.  By agreeing to this protocol, the Parties do not admit that the production of ESI is necessary or appropriate for any given document request.  The Parties reserve all rights to make objections when responding to document requests.  Nothing in this Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in this case.

## 3.      ESI SEARCH

A.      The Producing Party and Receiving Party shall meet and confer within fourteen (14) days after serving discovery responses in an effort to agree upon:

> i.      The custodians to be searched for Responsive Documents;
>
> ii.      The search terms that will be used to identify Responsive Documents;
>
> iii.      The temporal scope of any search for Responsive Documents; and

iv.     Any other matter necessary to accomplish the objectives of this Protocol and/or complete the production of Responsive Documents.

B.     The Parties shall meet and confer in good faith and cooperate in facilitating the production of Responsive Documents pursuant to this Protocol regarding, among other things, the data systems and devices (e.g., servers, cell phones, tablets, laptops) utilized by the Producing Party, the location of potential data sources, the identity of potential custodians of relevant information and the preservation policies and practices of the Producing Party.

C.     It shall be the obligation of the Producing Party to timely initiate the meet and confer process set forth in Section 3(A).  In the event the Parties cannot reach agreement on a disputed matter in connection with the production of Responsive Documents, including the items set forth in Section 3(A)(i)-(iii), the Parties shall submit the matter to the Court for determination.

## 4.     **PRODUCTION FORMAT**

A.     All productions of ESI shall be made in the following folder structure:

i.     **IMAGES**:  This folder will contain multiple sub-folders with only TIFF files in them.  No other type of file should reside in the "IMAGES" folder.  Except as provided in Section 4(C) and (D), ESI shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files not less than 300 dpi resolution.  Each file will be assigned a control number which will be the Bates number of the document.  Sub-folders shall not contain more than 1,000 images per folder.

ii.     **TEXT**:  The images shall be accompanied by text files, in UTF8 format, in a separate folder labeled "TEXT" matching the folder structure of the IMAGES folder.  These

text files will contain the extracted text on a per-document basis, if available.  Where extracted text is not available, the Parties shall render that ESI text searchable via OCR or other means. The Parties will not be required to produce extracted text or to render text searchable via OCR or other means the <u>redacted portions</u> of any document which is redacted.  The text files shall be named to match the endorsed Document Number (a/k/a Bates number) assigned to the image of the first page of the document per Section 4(F).

   iii. **DATA**:  Documents produced by each Party shall include load files and file structures compatible with Concordance and Relativity as follows:

    (a) The Producing Party shall provide an image cross-reference load file, in the format of an Opticon OPT file, providing the beginning endorsed number of each document and the number of pages it comprises, the volume, the relative path to each individual image, the breaks between documents, and the number of pages as is customary in an OPT file.

    (b) The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files, that shall contain the metadata, as reasonably available and to the extent captured at the time of the collection, associated with each Production Field specified in Schedule A.  For the avoidance of any doubt, there is no obligation on the Producing Party to create metadata where none exists or where it is not reasonably available. The path of each relative TEXT file shall also be included in the DAT file pursuant to Schedule A ("Extracted Text Path").

   iv. **NATIVES**:  This folder will contain only native files pursuant to Section 4(D).

B.      At the discretion of the Producing Party, Paper Discovery may be produced in electronic form.  If produced in electronic form, the production shall be provided in the same folder structure set forth in Section 4(A).  The data load file stated in Section 4(A)(iii)(b) shall contain the metadata associated with each Production Field specified in Schedule B.  If reasonably practicable, Paper Discovery produced in electronic form shall be rendered text searchable via OCR or other means by the Producing Party.

C.      To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

D.      To the extent a Producing Party produces Microsoft Excel or other spreadsheets, Microsoft Access or other databases, Microsoft PowerPoint files, video or audio files, animation files, or other information that is only readable and/or useable in its Native Format, such documents shall be produced in their Native Format.  Additionally, in the event a Receiving Party requests that a particular document be produced in Native Format, the Receiving Party must provide a list of Bates numbers and the reason for the Native Format request and then the Producing Party and the Receiving Party shall confer in good faith about whether such document shall be produced in Native Format and, if the Producing Party agrees to produce the document in Native Format, the timing and method of such production.  .  To the extent documents produced in Native Format contain privileged information and cannot be redacted or produced in TIFF format, such documents shall be logged on a privilege log in accordance with to Section 8.

E.     Subject to any necessary redactions, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Section 5.  To the extent the Producing Party believes native file redaction is appropriate, the Producing Party can redact in native format and provide information to the Receiving Party about such native file redaction.  Documents that present imaging or formatting problems that are known to the Producing Party and for which the Producing Party has not been able to resolve at the time of production shall be promptly identified by the Producing Party to the Receiving Party within ten (10) days of the production containing the problematic document(s).

F.     Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number"; a/k/a Bates number) not less than six (6) digits electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.  The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "ABC 0000000").  Each Party shall have a unique identifying name.  Any confidentiality designation pursuant to the Stipulated Protective Order should also be electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.

G.     If a document is more than one (1) page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.  The Producing Party should determine logical document breaks, and attachments should be preserved.

H.      Except as otherwise provided in Section 4(I), parent-children relationships (the association between e-mails and attachments) shall be preserved, and attachments to e-mails shall not be eliminated from the parent e-mail.  E-mail attachments shall be consecutively produced with the parent e-mail, and families shall be associated using attachment range metadata (i.e., "Beg Attach" and "End Attach" in Schedule A).  In the event that only a portion of a family (e-mail or attachment) is responsive to any document request, the entire family shall be produced in accordance with this Protocol.

I.      In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to an otherwise production-eligible document may be produced as a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been withheld as non-responsive.

J.      Documents containing color need not be produced in color unless color is necessary to understanding the meaning of the document or for the purpose of legibility.

K.      To the extent identical copies of documents (i.e., documents with identical SHA-1 or MD5 hash values) appear in the documents identified by the Producing Party for production, the Producing Party need only produce one such identical copy.  Each Party may also de-duplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain.

L.      The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media such as SFTP ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production

Media, the Production Volume, and the Document Number ranges of the documents in that

production (e.g., "ABC Production March 1, 2016, ABC 0000123 - ABC 0000456").  To the

extent that the Production Media includes any information designated as "CONFIDENTIAL" or

"CONFIDENTIAL -  ATTORNEYS' EYES ONLY" under the Stipulated Protective Order in this

action, the label on such Production Media shall indicate that the Production Media includes

information so designated.  Production Media shall include text referencing the case name and

number.  Further, any replacement Production Media shall cross-reference the original

Production Media, clearly identify that it is a replacement and cross-reference the Document

Number range that is being replaced.  All Production Media that is capable of write protection

should be write-protected before production.  All Production Media shall be encrypted, and the

encryption key shall be provided by the Producing Party prior to or concurrently with furnishing

the Production Media.  If any piece of Production Media is known to have any physical defect,

electronic defect, or damaged data, or is infected with any virus or other harmful software of any

kind, it should be clearly labeled so that appropriate care can be taken during its examination.

     M.    The Parties agree that there is no obligation to re-collect or re-produce any prior

productions or produced prior to the entry of this Protocol.  This includes not requiring either

Party to re-produce productions in the production format outlined in this Protocol.

     N.    To the extent that documents to be produced pursuant to this Protocol cannot be

rendered or viewed without the use of proprietary third-party software, the Parties shall meet and

confer in an attempt to minimize any expense or burden associated with the production and

examination of such documents in an acceptable format.

5. **PROCESSING SPECIFICATIONS**

A.     The Producing Party shall collect and process documents using forensically sound methods that take reasonable steps to avoid destruction or loss of data.  The Producing Party will generate and preserve the MD5 or SHA-1 hash values at the time of ESI processing.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

i.     Tracked changes, author comments, hidden columns and hidden rows shall be produced "as is" (i.e., as maintained by the source in the ordinary course of business).

ii.     OLE Embedded files need not be extracted as separate documents.

iii..     Auto-populated fields, with the exception of auto-populating "page-number" fields, may be replaced with text indicating the field name.  For example, auto-populating "date" fields may be replaced with the text "DATE" and auto-populating "file path" fields may be replaced with the text "PATH".

iv.     To the extent documents in a foreign language are produced, processing of such documents shall be unicode-compliant.

v.     To the extent reasonably practicable, all ESI shall be processed with a single consistent time zone date and time setting.

6. **ESI OF LIMITED ACCESSIBILITY**

A.     The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

{00085961;1}                                  10

B.   The Parties agree that the circumstances of this case may not warrant the preservation, collection, review, or production of certain ESI that is not reasonably accessible. Moreover, the remote possibility of additional relevant information existing sources that are not reasonably accessible may be substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from such sources.  The Parties agree that the following ESI may not be reasonably accessible:

1.   Data retained on back-up tapes.

2.   Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

3.   Random access memory (RAM), temporary files, or other ephemeral data.

4.   On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.   Data stored on photocopiers, scanners and fax machines.

6.   Data in metadata fields that are frequently updated automatically, such as last-opened dates, except for the most recently updated data contained in these metadata fields.

7.   Server, system or network logs.

8.   Electronic Data stored on a hard drive, mobile device or tablet (e.g., iPhone, iPad, Android, and Blackberry devices) that is synched to or retrievable from another source or device (e.g., e-mail and calendar) that the Producing Party believes, after a reasonably diligent inquiry, does not contain relevant or responsive information.

Nothing in this provision shall limit or constitute a waiver of a Party's right to submit a dispute to the Court regarding the production of categories ESI identified above (Section B(1)-(7)).  In the event a requesting Party has a good faith basis to believe that production of any of the above categories is necessary, the Parties shall follow the procedures set forth in Section 6(C).

C.      If a Producing Party contends that any responsive ESI other than the categories enumerated in Section B(1)-(7) is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the places in which such ESI is kept.  The Parties shall negotiate in good faith concerning the production of any such ESI.  If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court, who shall determine what burdens, if any, may be imposed upon the Producing or Receiving Parties in order to resolve the dispute, and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.  In the event of the need to submit a dispute to the Court, the Party from whom the ESI is sought has the burden of showing that the information sought by the requesting Party is not reasonably accessible pursuant to Fed. R. Civ. P. 26(b)(2)(B).

**7.      COST SHIFTING**

A.      The Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.  Additionally, the Court may apportion the costs of electronic discovery upon a showing of good cause by the Party seeking

apportionment.

B.      Should a Party serve ESI requests beyond the limits agreed to by the Parties or granted by the Court, the requesting Party may be ordered to bear the reasonable costs caused by such additional discovery, if, after being provided with notice that the requesting Party's requests exceed the allowable limits, the requesting Party nevertheless refuses to withdraw its requests or refuses to narrowly tailor those requests so that they do not exceed allowable limits.

C.      Nothing in this paragraph precludes recovery of costs under Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, or otherwise pursuant to statute, or resulting from a motion for attorneys' fees.

## 8.    **PRIVILEGE LOG**

A.      Consistent with Fed. R. Civ. P. 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log as outlined in Section 8(C) ("Privilege Log").  The Privilege Log shall also contain the Bates range corresponding any redacted document.

B.      The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications exclusively between the Parties and their outside legal counsel concerning this litigation; (b) communications exclusively between Defendants' in-house counsel, Defendants and/or Defendant's outside legal counsel concerning this litigation, (c) work product of counsel, and (d) any internal communications within a law firm.

C.      In an effort to avoid unnecessary expense and burden, the Parties agree that, for ESI redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a Privilege Log

containing, for each document claimed as privileged, an export of all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege.   The export should include the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- AUTHOR
- CREATEDDATE
- HASH
- PRIV_TYPE

If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.   Within thirty (30) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request.   If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

9.     **PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

A.     No Waiver by Disclosure.  This Protocol is entered pursuant to Rule 502(d) of the Federal Rules of Evidence.  Subject to the provisions of this Protocol, if a Producing Party or subpoenaed nonparty (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege, work product protection or any other applicable privilege ("Protected Information"), the disclosure of that Protected Information will not automatically constitute or be deemed a waiver or forfeiture – in this or any other action – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

B.     Notification Requirements; Best Efforts of Receiving Party.  A Disclosing Party must promptly notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure and must explain as specifically as possible why the Protected Information is privileged.  Upon such notification, the Receiving Party must – unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (C) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has and (ii) certify that it will cease further review, dissemination, and use of the Protected Information.

C.     Contesting Claim of Privilege or Work Product Protection.  If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party

must – within fifteen (15) business days of receipt of the Disclosing Party's written explanation as required under Section 9(B) – move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion").   Pending resolution of the Disclosure Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

D.      Stipulated Time Periods.  The parties may stipulate to extend the time periods set forth in Sections 9(B) and (C).

E.      Attorney's Ethical Responsibilities.   Nothing in this ESI Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

F.      Burden of Proving Privilege or Work-Product Protection. The Disclosing Party retains the burden – upon challenge pursuant to Section 9(C) – of establishing the privileged or protected nature of the Protected Information.

G.      In-camera Review.  Nothing in this ESI Order limits the right of any Party to petition the Court for an in-camera review of the Protected Information.

H.      Voluntary and Subject Matter Waiver.  This ESI Order does not preclude a Party from voluntarily waiving the attorney-client privilege or work product protection under Rule 502 of the Federal Rules of Evidence.

I.      Review.  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance,

responsiveness and/or segregation of privileged and/or protected information before production.

## 10.   MISCELLANEOUS PROVISIONS

A.      In the event any dispute between the Parties arise in connection with any matter related to this Protocol, the Parties shall meet and confer in good faith in an attempt to resolve this dispute.  If, after this meet and confer effort, the Parties are unable to reach agreement on the disputed mater, the Parties shall submit the matter to the Court for determination.

B.      To the extent any document exists in more than one language, the document shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that document but shall render that document text searchable via OCR or other means, if reasonably practicable.

C.      By entering into this Protocol, no Party waives any substantive objections it might have with respect to the production of documents covered by this Protocol.

D.      Nothing in this Protocol shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privilege and/or protected information prior to production.    The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.    Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

E.      Nothing in this Protocol shall affect the admissibility into evidence of documents produced pursuant to this Protocol, or abridge the rights of any Party to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Court concerning

the admissibility of documents produced pursuant to this Protocol.

     F.     Any Party who has not executed this Protocol as of the time it is presented to the Court for signature may thereafter become a party to this Protocol by its counsel's signing and dating a copy thereof and filing the same with the Court, and serving copies of such signed and dated copy upon the other parties to this Protocol.

SO STIPULATED AND AGREED:

Dated:  November 7, 2017              By:_____
                                        Charles J. Harder, Esq.
                                        HARDER MIRELL & ABRAMS LLP
                                        132 S. Rodeo Drive, Fourth Floor
                                        Beverly Hills, California 90212
                                        Tel. (424) 203-1600

Dated:  November 7, 2017              By:_____
                                          Anthony J. Harwood, Esq.
                                          HARDER MIRELL & ABRAMS LLP
                                        488 Madison Avenue, Eighteenth Floor
                                        New York, NY 10022
                                        Tel. (212) 799-1400

                                        *Counsel for Plaintiff Yoron Cohen*

Dated:  October ____, 2017              By:_____
                                          Jason D. Burns, Esq.
                                          MORGAN, LEWIS & BOCKIUS LLP
                                        101 Park Avenue
                                        New York, NY 10178
                                        Tel. (212) 309-6000

                                        *Counsel for Defendants Jones Lang LaSalle Americas, Inc., Peter Riguardi and Stephen Schlegel*

the admissibility of documents produced pursuant to this Protocol.

F.      Any Party who has not executed this Protocol as of the time it is presented to the

Court for signature may thereafter become a party to this Protocol by its counsel's signing and

dating a copy thereof and filing the same with the Court, and serving copies of such signed and

dated copy upon the other parties to this Protocol.

SO STIPULATED AND AGREED:

Dated:  October ___, 2017                    By:_____
                                             Charles J. Harder, Esq.
                                             HARDER MIRELL & ABRAMS LLP
                                             132 S. Rodeo Drive, Fourth Floor
                                             Beverly Hills, California 90212
                                             Tel. (424) 203-1600


Dated:  October ___, 2017                    By:_____
                                             Anthony J. Harwood, Esq.
                                             HARDER MIRELL & ABRAMS LLP
                                             488 Madison Avenue, Eighteenth Floor
                                             New York, NY 10022
                                             Tel. (212) 799-1400

                                             *Counsel for Plaintiff Yoron Cohen*

Dated:  October ___, 2017                    By:_____
                                             Jason D. Burns, Esq.
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             101 Park Avenue
                                             New York, NY 10178
                                             Tel. (212) 309-6000

                                             *Counsel for Defendants Jones Lang LaSalle*
                                             *Americas, Inc., Peter Riguardi and Stephen*
                                             *Schlegel*

18

**SO ORDERED:**

_____
Honorable Denise L. Cote
United States District Judge

**Schedule A: Production Fields for ESI**

| Field Name | Description |
| --- | --- |
| Volume | The Production Volume as defined in Section 1(J). |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. |
| Redacted | Populated with a "Yes" if redacted. |
| Custodian | Custodial source from which the document was collected. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| Author | If available, the person(s) who created, wrote, reviewed, signed, or approved the document.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| Title / Subject | If available, verbatim subject or re: line, or discernable document title appearing on the document's first page. |
| Date Modified | If available, the date the document was last modified. |
| Date Accessed | If available, the date the document was last accessed. |
| Date Created | If available, the date the document was created.<br><br>*Parties acknowledge that the Date Created field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location). |
| Source(s) | Non-custodial source(s) from which the document was collected. |
| File Name | Original file name. |
| File Ext | Original file extension. |

| Document Type | The file extension describing the type of document (*e.g.*, Microsoft Word document). |
|---|---|
| To | The persons or recipients of the email. |
| From | The author or originator of the email. |
| CC | The persons carbon copied on an email. |
| BCC | The persons blind carbon copied on an email. |
| Date Sent | Date the email was sent from the originator's system. |
| Time Sent | Time the email was sent from the originator's system. |
| Email Subject | Subject line of the email. |
| Date Received | Date the email was received by the recipient's system. |
| Time Received | Time the email was received by the recipient's system. |
| Extracted Text Path | A relative file path to the text file associated with the Bates Number. |
| Hash Value | The MD5 or SHA-1 hash of the native file, not the produced TIFF files. |

\* If the Producing Party's processing software combines fields, there is no obligation to separate the fields at production as long as all of the fields, to the extent available, are included in the .DAT file.

## Schedule B: Production Fields for Paper Discovery

| Field Name | Description |
|---|---|
| Volume | The Production Volume as defined in Section 1(J). |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| Redacted | Populated with a "Yes" if redacted. |
| Custodian | Custodial source from which the document was collected. |
| Source | Non-custodial source(s) from which the document was collected. |
| Extracted Text Path | If available, a relative file path to the text file associated with the Bates Number. |