UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YORON COHEN,<br><br>    Plaintiff,<br><br>  v.<br><br>JONES LANG LASALLE AMERICAS, INC., PETER RIGUARDI, and STEPHEN SCHLEGEL,<br><br>    Defendants. | No. 17-CV-03471<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ISSUANCE OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE IN THE UNITED KINGDOM (LETTERS ROGATORY)** |

Plaintiff Yoron Cohen ("Plaintiff" or "Mr. Cohen") hereby submits this Memorandum of Law in support of his Motion for Issuance of a Request for International Judicial Assistance to Obtain Evidence in the United Kingdom (Letters Rogatory) (the "Motion").

## INTRODUCTION

Mr. Cohen submits this Motion in order to obtain evidence from Gavin Morgan ("Mr. Morgan"), a key third party witness who currently resides in the United Kingdom, and is therefore beyond the subpoena power of this Court. It is beyond dispute that Mr. Morgan, a former vice chairman of defendant Jones Lang LaSalle Americas, Inc. ("JLL"), is a material witness with substantial personal knowledge of events and issues at the center of this lawsuit.

Mr. Cohen and defendants JLL, Peter Riguardi and Stephen Schlegel (collectively, "Defendants") have all identified Mr. Morgan as a person likely to have discoverable information in their Initial Disclosures. Ex. A and B to Declaration of Ryan J. Stonerock ("Stonerock Dec."), Mr. Cohen's and Defendants' Initial Disclosures. Defendants' recent discovery responses further confirm that Mr. Morgan has personal knowledge of key issues in this litigation, including Mr. Cohen's financial and sales performance at JLL, the placement of

Mr. Cohen's office at JLL, and the truth or falsity of the statements underlying Mr. Cohen's slander claim.  Ex. C to Stonerock Dec., JLL's Responses to Mr. Cohen's Interrogatories Nos. 2, 5 and 7.  Accordingly, Mr. Cohen respectfully requests that the Court enter an Order granting the Motion and issue a Request for International Judicial Assistance to Obtain Evidence in the United Kingdom through the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters in the form attached to the Motion as Exhibit 1.

## FACTUAL BACKGROUD

### I. Mr. Morgan's Relationship to Mr. Cohen's Claims

This action arises out of Defendants' campaign of discrimination against Mr. Cohen based on his age.  Amended Complaint [Dkt. No. 32-1] (the "Amended Complaint"), ¶ 1.  At 63 years old, Mr. Cohen is one of the top commercial real estate brokers in New York City, and has been for many years.  *Id*.  After Mr. Cohen's experienced, industry leading team established JLL's Capital Markets Group in the upper tier of New York commercial real estate, JLL shifted its focus toward a younger office, consistent with JLL's desire to employ a youthful workforce.  Amended Complaint, ¶ 1, 14-15, 17.  In doing so, JLL discriminated against Mr. Cohen and his partners, all of whom were above or near 60 years old, with the intent of replacing them with younger employees.  *Id.*

In or about December 2015, JLL appointed **Mr. Morgan**, a 45-year old outsider from JLL's Hong Kong office, as head of its Capital Markets Group for the New York Tri-State area.  Amended Complaint, ¶ 14; Ex. D to Stonerock Dec., JLL News Release, 12/17/15. Through this appointment, JLL removed management of Mr. Cohen's team and business line from Mr. Cohen and his partners and awarded it to Mr. Morgan, who was fifteen years their junior, without consulting or offering the role to Mr. Cohen or his partners, as required by its

agreement with Mr. Cohen's team.  Thereafter, Mr. Morgan continued JLL's campaign to drive Mr. Cohen and his partners out of JLL and replace them with a younger workforce.  This included conducting individual meetings with Mr. Cohen's team during which Mr. Morgan told certain team members that Mr. Cohen and his partners were "**old**," "**tired**," and "**checked out**" and that JLL was looking to "**recruit younger talent**."  Amended Complaint, ¶ 14.  JLL also moved Mr. Cohen and his team from their established office space to a far less desirable location and configuration, which inhibited their ability to collaborate effectively, and implemented changes that effectively reduced the compensation of Mr. Cohen and his team, including divesting of them of exclusivity for certain types of transactions, removing senior personnel on Mr. Cohen's team from JLL's payroll and shifting those costs to Mr. Cohen's team, and improperly withholding bonus payments to Mr. Cohen's team.  *Id.*  Left with no reasonable alternative, Mr. Cohen and his partners resigned from their position at JLL at the end of 2016.  Amended Complaint, ¶ 2, 16.

In an attempt to distract from the true reason for the departure of Mr. Cohen and his partners, Defendants made false and defamatory statements to a reporter at the *The Real Deal*, a leading publication covering the New York real estate industry.  Amended Complaint, ¶ 18-19.  The resulting story was entitled "*Inside the exodus of JLL's I-sales quartet*" and published by *The Real Deal* on January 6, 2017 (the "Article").  Amended Complaint, ¶ 19; Ex. E to Stonerock Dec., Article.  The Article contained several false statements Defendants made about Mr. Cohen and his team to *The Real Deal*, including that Mr. Cohen and his partners were underperforming at JLL, that they were informed of this during a meeting in January 2016, and that they were given an ultimatum in September 2016 to improve their numbers or they would be required to leave JLL in December 2016.  Amended Complaint, ¶ 3, 19; Ex. E

to Stonerock Dec., Article.  Defendants' statements led readers to believe that Mr. Cohen was forced out of JLL due to poor performance.  However, all of these statements were false.

Meanwhile, as reported in the Article, "[Mr.] Morgan, who relocated from JLL in Hong Kong to manage the New York Capital markets Group in December 2015, was recently reassigned after a year of what sources both within and outside JLL said was poor leadership."  Ex. E to Stonerock Dec., Article.  Mr. Cohen believes that Mr. Morgan was terminated by JLL in connection with his allegations, as Defendants have confirmed that Mr. Morgan is no longer an employee of JLL.  Ex. B to Stonerock Dec., Defendants' Initial Disclosures.

**II.      The Parties Identify Mr. Morgan as a Key Third Party Witness**

There is no dispute that both Mr. Cohen and Defendants believe Mr. Morgan to be an important witness in this action.  Mr. Cohen's Initial Disclosures identify Mr. Morgan as having knowledge of: (1) the falsity of Defendants' statements to *The Real Deal*; (2) the true facts relating to Defendants' statements to *The Real Deal*; (3) Defendants' age discrimination against Mr. Cohen; and (4) all matters raised in Mr. Cohen's Complaint.  Mr. Cohen's Initial Disclosures, Ex. A to Stonerock Dec.

Defendants similarly identify Mr. Morgan in their Initial Disclosures and describe his knowledge as follows:

> Gavin Morgan, former JLL Vice Chairman.  Mr. Morgan has knowledge regarding Plaintiff's affiliation with JLL, JLL's compensation arrangement with Plaintiff and Plaintiff's partners, the performance of Plaintiff and Plaintiff's partners, and the voluntary decision by Plaintiff and his partners to leave JLL to join Colliers Capital Markets ("Colliers"). Defendants' Initial Disclosures, Ex. B to Stonerock Dec.

Defendants' recent discovery responses further confirm that Mr. Morgan has personal knowledge of key issues in this litigation, including Mr. Cohen's financial and sales performance

at JLL, the placement of Mr. Cohen's office while at JLL, and the truth or falsity of the statements underlying Mr. Cohen's slander claim. Ex. C to Stonerock Dec., JLL's Responses to Plaintiffs' Interrogatories Nos. 2, 5 and 7.

Following receipt of Defendants' Initial Disclosures, Mr. Cohen contacted Defendants' counsel regarding making Mr. Morgan available for deposition, as the Initial Disclosures stated that Mr. Morgan "may be contacted only through Defendants' counsel." Stonerock Dec, ¶ 7. Defendants' counsel has since advised that this statement was made in error and they do not represent Mr. Morgan. Stonerock Dec, ¶ 7. As a such, the instant Motion is necessary to procure testimony from Mr. Morgan, as it is believed Mr. Morgan will only provide this evidence pursuant to a formal Request in conformity with the Hague Convention. Mr. Cohen's counsel provided a copy of the Motion, this Memorandum and the Request for International Judicial Assistance to Defendants' counsel on January 3, 2018. Stonerock Dec, ¶ 8. In response, Defendants' counsel has advised that Defendants would not consent to this Motion. Stonerock Dec, ¶ 8

## ARGUMENT

### I.   Legal Standard

One method for seeking discovery abroad is issuing a letter of request through the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, which charges the signatory nations (including the United Kingdom) to cooperate in discovery matters. *Société Nationale Industrielle Aérospatiale v. United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 530-31 (1987); *see also, Id.* at 533 ("[T]he discovery rules set forth in the . . . Hague Convention are the law of the United States.")

Letters rogatory are the means by which a court can formally request that a court in another country lend its judicial assistance in obtaining evidence or performing some other judicial act. *See, e.g., Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012) ("[P]arties may also use letters rogatory to 'take evidence from a specific person within the foreign jurisdiction.'" (quoting Black's Law Dictionary 778 (9th ed. 2009))); *see also,* 28 U.S.C. § 1781(b)(2); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011) ("Letters rogatory are an appropriate mechanism for securing the testimony of other witnesses who cannot be compelled to appear in this Court.") (internal quotation marks omitted).

The Hague Convention outlines the specific requirements that letters rogatory directed toward signatory nations must contain. Hague Convention, 23 U.S.T. 2555, Art. 3(a)-(i) (requiring the issuing party to specify, among other things: "the evidence to be obtained . . . names and addresses of the persons to be examined . . . questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined . . . documents or other property . . . to be inspected…")

The determination to issue letters rogatory is committed to the court's discretion. *United States v. Al Fawwaz*, No. S7 98 Crim. 1023, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (internal citations omitted); *Horvath v. Deutsche Lufthansa*, AG, No. 02 Civ. 3269, 2004 WL 241671, at *3 (S.D.N.Y. Feb. 9, 2004). "In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26." *Lantheus Med. Imaging*, 841 F. Supp. 2d at 776; *see also, Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, No. 11 Civ. 3108, 2012 WL 4784632, at *3 (S.D.N.Y. Oct. 4, 2012) ("[A] court

should not authorize the service of letters rogatory if it would not approve of the discovery requests in a purely domestic context.")

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013) (internal quotation marks omitted).  Therefore, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action." Fed. R. Civ. P. 26(b)(1).  Evidence that satisfies Rule 26 is discoverable even if that evidence is inadmissible. *Id.*  "The burden of demonstrating relevance is on the party seeking discovery." *Chen-Oster*, 292 F.R.D. at 561.  "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Id.*; *see also Blagman v. Apple, Inc.*, No. 12 CIV. 5453 ALC JCF, 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) ("A party opposing issuance of a letter rogatory must show good reason why such letter should not issue.") (citing *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 26-27 (D. Conn. 2003)).

Although a signatory to the Hague Convention, the United Kingdom has reserved its right to impose strict pretrial discovery standards when evaluating letters rogatory received from foreign nations.  *See,* Protection of Trading Interests Act, 1980, c. 11, § 2 (Eng.). "Evidence requested in . . . letters rogatory can only be ordered to the extent that it is confined to evidence which will be admissible at trial . . . ." *Apple Comps., Inc. v. Doe*, [2002] EWHC (QB) 2064, 2002 WL 31476324 (Queen's Bench Division Sept. 18, 2002); *see also Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06 CV 1446, 2008 WL 719243, at *5 (E.D.N.Y. March 18, 2008) (recognizing that the law of the United Kingdom prohibits the deposition of third-party witnesses "for the purpose of seeking information which, though

inadmissible at trial, appears to be reasonably calculated to lead to the discovery of admissible evidence.")

### III. The Testimony Sought from Mr. Morgan is Relevant to this Lawsuit

As detailed above, Mr. Morgan is a material witness with direct involvement in a the events at the center of this lawsuit.  As part of JLL's scheme to discriminate against Mr. Cohen, JLL took management of Mr. Cohen's team away from him and his partners and gave it to Mr. Morgan.  Thereafter, Mr. Morgan made statements to members of Mr. Cohen's team which reflected clear discriminatory intent on the part of Defendants, including that Mr. Cohen and his partners were "old," "tired," and "checked out" and that JLL was looking to "recruit younger talent."  Additionally, during Mr. Morgan's tenure as the head of JLL's New York Capital Markets group, several changes were made which effectively reduced Mr. Cohen's and his team's compensation, including divesting Mr. Cohen's team of exclusivity for certain types of transactions, removing senior personnel on Mr. Cohen's team from JLL's payroll and shifting these costs to Mr. Cohen's team, and improperly withholding bonus payments to Mr. Cohen's team.  Testimony from Mr. Morgan relating to these issues and events are directly relevant to Mr. Cohen's claims in this lawsuit, and satisfy the United Kingdom discovery standards and Rule 26 of the Federal Rules of Civil Procedure.

### IV. The Request for Judicial Assistance Complies with United Kingdom Law

As noted above, the Hague Convention requires a letter of request to specify certain information.  Hague Convention, 23 U.S.T. 2555, Art. 3(a)-(i).  Additionally, the United Kingdom limits depositions to evidence admissible at trial.  *See, e.g,. Metso Minerals, Inc.*, 2008 WL 719243, at *5.

Accordingly, Mr. Cohen has retained a solicitor in the United Kingdom with experience in prosecuting foreign requests in United Kingdom courts under the Hague Convention.  The

form of the Request attached to the Motion as Exhibit 1 is in the format required by the United Kingdom and favored by the receiving Court. Additionally, the Request limits the requested testimony from Mr. Morgan to discrete, enumerated, topics and calls only for evidence likely to be admissible at trial.

## CONCLUSION

For the foregoing reasons, Mr. Cohen respectfully request that this Court issue an Order granting the Motion and issue the Request for International Judicial Assistance attached to the Motion as Exhibit 1.

Dated:  January 5, 2018

Respectfully submitted,

By:     /s/ Ryan J. Stonerock
Ryan J. Stonerock, Esq.
Charles J. Harder, Esq.
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Tel. (424) 203-1600
Email:  rstonerock@hmafirm.com
Email:  charder@hmafirm.com

Anthony J. Harwood, Esq.
HARDER MIRELL & ABRAMS LLP
488 Madison Avenue, Eighteenth Floor
New York, New York 10022
Tel. (212) 799-1400
Email:  aharwood@hmafirm.com

*Counsel for Plaintiff Yoron Cohen*