I1Q7COHC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  YORON COHEN,

4               Plaintiff,

5        v.                              17 Civ. 3471 (DLC)

6  JONES LANG LASALLE IP, INC.,
   PETER RIGUARDI and STEPHEN SCHLEGEL,
7
                Defendants.
8
   ------------------------------------x
9                                       New York, N.Y.
                                        January 26, 2018
10                                      2:00 p.m.

11 Before:

12                    HON. DENISE L. COTE

13                                      District Judge

14              APPEARANCES (via telephone)

15 HARDER MIRELL & ABRAMS LLP
        Attorneys for Plaintiff
16 BY:  RYAN STONEROCK

17 MORGAN LEWIS & BOCKIUS LLP
        Attorneys for Defendants
18 BY:  JASON BURNS

19

20

21

22

23

24

25

I1Q7COHC

```
1              (In chambers)
2              THE COURT:  Good afternoon, counsel.
3              MR. STONEROCK:  Good afternoon, your Honor.  Ryan
4     Stonerock on behalf of plaintiff.
5              MR. BURNS:  Good afternoon, your Honor.  This is Jason
6     Burns from Morgan Lewis on behalf of defendants.
7              THE COURT:  Thank you.  I have you on speakerphone
8     because I have a court reporter and my law clerk with me.
9              This conference is being held because of letters
10    received on January 24 and January 26 from counsel.  It's
11    basically plaintiff's application for further discovery.
12             Let me just ask you, Mr. Stonerock, are the issues
13    narrowed as a result of defendant's letter or not?
14             MR. STONEROCK:  I think, your Honor, slightly narrowed
15    with respect to particularly the fifth category in our letter,
16    but I don't think -- I didn't see at least in reviewing
17    defendant's letter any movement on the first four categories.
18             THE COURT:  OK, good.
19             This dispute comes to me a little late.  Under my
20    scheduling order, any disputes regarding the scope of ESI
21    discovery were to be presented to me by November 2.
22    Nonetheless, let's just address these and see if we can cut
23    through the issues.
24             As I understand it, the period of complaint with
25    respect to how the plaintiff was treated was the period
```

I1Q7COHC

1   beginning December of 2015 until he left, though that was a

2   voluntary leave that he took, or he left for new employment.

3            Do I understand that correctly, Mr. Stonerock?

4            MR. STONEROCK:  Your Honor, with respect to the time

5   period, the actual discriminatory action specifically with

6   respect to our client, that time period is correct.

7            And with respect to whether or not Mr. Cohen

8   voluntarily left JLL, our position is that given the different

9   discriminatory actions that were taken by the defendant, he had

10  no choice but to leave.

11           Now, you know, with respect to the scope -- and I

12  don't want to overstep here -- but with respect to the scope --

13  and I think this deals with the first two categories really of

14  documents identified in our letter -- you know, there was, from

15  our client's perspective, a pervasive culture at Jones Lang

16  LaSalle that was a youth-oriented culture that existed long

17  before this specific discriminatory act in question.  And I

18  think also the Second Circuit case law on the subject is pretty

19  clear that it's not just the discriminatory behavior that was

20  directed at the plaintiff that's relevant to the analysis.  The

21  courts will look to the environment beyond just, you know,

22  complaints by the plaintiff, and will look to complaints by

23  other employees that were similar to what the plaintiff is

24  alleging.

25           So, I think that the primary issue, I believe -- or at

I1Q7COHC

1    least one of the primary issues is sort of the temporal scope

2    of what defendants are willing to search for and produce, and

3    we believe, you know, that scope, at least with respect to the

4    age discrimination, should be back to when Mr. Cohen's

5    employment began at JLL in middle of 2010.

6             THE COURT:  OK, thank you.

7             So, I'm not going to do that.  We are now talking

8    about ESI, so if the requests refer to something else and I'm

9    not completely capturing your request, you will let me know,

10   but in terms of ESI, we're going to capture the period when the

11   discrimination began with respect to the plaintiff.  Because,

12   as I remember from my conference -- and I think there is no

13   dispute about it -- he believes that his mistreatment began

14   when he had a new manager, Mr. Morgan, who was transferred from

15   Hong Kong to New York; and that happened, as I understand it,

16   in December of 2015.  So, the plaintiff's experience of any

17   discrimination lasted for about a year, December of '15 to

18   November of '16.

19            I think there is one other interesting fact that is of

20   importance to the plaintiff, and that has to do with something

21   that occurred a few months after the plaintiff left, and that

22   was a press release that I believe was issued on January 6,

23   2017 that was allegedly defamatory.  So, the critical period of

24   time here is roughly December of 2015 to some appropriate time

25   after that press release on January 6, 2017, so let us say at

I1Q7COHC

1    the outside to March 1, 2017.

2              So, as a timeframe for ESI discovery, and perhaps for

3    other kinds of discovery as well -- but at least for ESI

4    discovery -- the core period is December 1, 2015 to March 1,

5    2017.

6              In terms of the search terms, as I understand the

7    issue, the parties have agreed on a number of search terms that

8    have to do with age in one way or another, terms like "old

9    timer" or "dinosaur," and they have agreed that at least three

10   custodians ESI should be searched in connection with this, and

11   they are Riguardi, Schlegel and Mr. Morgan, the person who

12   transferred from Hong Kong to New York.

13             The question is whether with respect to those three

14   custodians -- and we will get to the issue of other custodians

15   in a moment -- the e-mail searches should be limited by the use

16   of these terms -- I will call them age-related terms -- to just

17   Mr. Cohen and his partners.

18             Let me hear from you, Mr. Burns, with respect to that

19   issue.  If we have a narrow timeframe here, why can't we have a

20   broader search during that narrow timeframe?

21             MR. BURNS:  Thank you, your Honor.  I think the issue

22   has to do with, you know, plaintiff has not identified any

23   other employee who raised any complaints about age

24   discrimination.  He himself has not even alleged that he raised

25   the complaint of age discrimination during his tenure at JLL.

I1Q7COHC

1    And to be clear, you know, he mentioned his three partners in

2    the complaint, although none of those three partners have

3    actually brought a discrimination complaint themselves, and we

4    have agreed that we will search for those specific terms as to

5    Cohen and his partners, although again, you know, those

6    partners have not alleged discrimination.  But we think it's

7    generous and appropriate, given the nature of the allegations

8    in the complaint, but to open this up to e-mails that on their

9    face will have nothing to do with plaintiff, nothing to do with

10   his partners is really beyond the scope of what might be

11   discoverable evidence in this case.

12       And if you just look at, for example, the term "old,"

13   you know, I can't tell you how many e-mails the term "old"

14   would come up for period with respect to these custodians, but

15   that term in and of itself has no discriminatory meaning.

16       So, again I would just go back to we have agreed I

17   think to a reasonable expanded scope which is not only

18   plaintiff but his four partners who he alleges experienced some

19   of the alleged events that he did in the complaint, but

20   anything beyond that is I think overly burdensome and really

21   more than anything is unduly speculative at this point.

22       THE COURT:  OK.  So, I will restrict the search to the

23   subject matter described in the January 24th letter of Mr.

24   Cohen and his three partners.  It's true, some of these terms

25   are very broad.  "Old" could be old news.  "Ancient" could be

I1Q7COHC

1    ancient sayings.  Many of these terms are not necessarily terms

2    that will be associated with a description of a person, much

3    less reflect any discriminatory activity with respect to an

4    employee or even a state of mind that might reflect age

5    discrimination.

6              We have to be conscious of the enormous cost of ESI

7    and the burden it imposes on both the producing party and the

8    reviewing party, and so I want to make sure things are

9    sufficiently tethered to the core issues here so that the cost

10   of discovery is not out of proportion to those issues.

11             OK.  With respect to the --

12             MR. STONEROCK:  Your Honor, before we move on, I

13   apologize, I don't mean to cut you off, but if I may be heard

14   for one minute.

15             THE COURT:  Is it this Mr. Stonerock speaking?

16             MR. STONEROCK:  Yes.  Sorry.

17             THE COURT:  Mr. Stonerock.

18             MR. STONEROCK:  Yes.  My concern here -- and your

19   Honor's point is very well taken with the costs and burden of

20   ESI -- but going back to if the court is going to limit the

21   search terms and the time period and the custodians for the

22   second category of documents, I just want to go back to the

23   first category, which is, you know, prior complaints or

24   accusations of age discrimination within the firm, within JLL.

25   And I think that those are clearly discoverable, in my view,

I1Q7COHC

1    under the Perry v. Ethan Allen case and the Cruz v. Coach

2    Stores case.  And the defendants have outright refused to

3    produce any, you know, documents that are responsive for any

4    time period and has just told us that, hey, look, the

5    defendants Riguardi and Schlegel and also Gavin Morgan haven't

6    had any accusations against them or complaints against them, so

7    that should be enough, plaintiff.  But I think that the

8    relevant evidence and the scope of discovery is actually much

9    broader on this issue.

10           So, if we're not going to get the search terms as

11   broad as we think we should be entitled to, then I think we

12   should at least, you know, be entitled to other allegations or

13   complaints of age-related discrimination that occurred at JLL

14   during Mr. Cohen's tenure.

15           THE COURT:  OK, that request is denied.

16           Now, of course that issue is really not an ESI issue.

17   I think it's asking -- I assume you posed a document demand for

18   those kinds of documents, and as the January 26 letter

19   indicates, defendants are not aware of any complaints of age

20   discrimination by any employee made against Mr. Morgan,

21   Mr. Riguardi or Mr. Schlegel.  To the extent you want

22   complaints of age discrimination made against other members of

23   JLL, that request is denied.

24           OK.  So, I'm trying to move along here.  Let's go to

25   the next issue, and the third issue has to do with the Real

I1Q7COHC

1    Deal article.  Again, I have extended the time of the ESI

2    search to March 1, 2017.  You can pose an interrogatory, if you

3    haven't, as to whether or not the defendants are aware of who

4    was the source, an undisclosed source for the article.  They

5    can answer it.  But as I understand it from their response, the

6    only one they know who spoke to the Real Deal about this issue

7    was the disclosed source, Mr. Riguardi, who was quoted in the

8    article, and that neither Mr. Riguardi nor Mr. Schlegel, I

9    assume -- but you will ask in deposition -- well, let me just

10   stop there.  You can inquire, of course, of the three

11   defendants during their depositions about their knowledge with

12   respect to this.

13            OK.  Let's turn to the issue of the transfer of Mr.

14   Morgan to the New York office.  I fail to see the relevance of

15   why this business decision was made to transfer one executive

16   from one office to another office.  As I understand it, he was

17   hired to oversee all of the capital markets business in New

18   York, and you can inquire during his deposition about his

19   history and qualifications for doing that if you want.

20            So, let's go to number five, documents concerning Mr.

21   Cohen's age, performance, compensation or resignation.

22            I assume, Mr. Stonerock, you have your client's

23   personnel file.

24            MR. STONEROCK:  We do, your Honor.

25            THE COURT:  OK.  And, as you can see from the

I1Q7COHC

1    responsive letter filed today by defense counsel, they have

2    agreed to produce sale and revenue data for roughly a six and a

3    half year period and, I guess, roughly the same for the

4    plaintiff's compensation.  And I assume you have your own

5    resignation letter, but that should be in the personnel file as

6    well.

7              So, Mr. Stonerock, is there any issue that remains

8    outstanding then that I haven't ruled on?

9              MR. STONEROCK:  I think the issue with respect to the

10   fifth category is just really I'd like to confirm that the

11   temporal scope will be the same scope that we have discussed,

12   you know, on other issues today, which is from December 1, 2015

13   to March 1, 2017, which is I think a couple months broader than

14   what the parties have agreed to.

15             THE COURT:  OK.  Now, I'm not sure.

16             MR. STONEROCK:  Age-related documents.

17             THE COURT:  OK.  I don't understand what you are

18   talking about.  Item five has to do with Mr. Cohen's age,

19   performance and compensation.  So, can you orient me here,

20   Mr. Stonerock, what are you referring to?

21             MR. STONEROCK:  My apologies.  So, we kind of broke it

22   out by different categories, and I think we are in agreement on

23   B, C and D.

24             With respect to A, defendants have proposed searching

25   documents from January 1, 2016 to February 1, 2017, as I

I1Q7COHC

```
1    understand it.  And as we discussed throughout this hearing,

2    the scope we have agreed upon I guess with respect to other

3    issues is actually December 1, 2015 to March 1, 2017, so that's

4    an additional month on either end for the age-related documents

5    beyond what the defendants have agreed to.

6               THE COURT:  Yes, I ordered that.  They didn't agree to

7    that.  Maybe they are consenting to it.  But I ordered that

8    timeframe with respect to ESI searches of identified custodians

9    with identified search terms.

10              MR. STONEROCK:  That's correct.  Yeah, defendants did

11   not agree to that, I understand that.

12              THE COURT:  OK.  So, I don't understand what your

13   request is now, Mr. Stonerock.

14              MR. STONEROCK:  I'm asking for the same temporal

15   scope.

16              THE COURT:  For what?

17              MR. STONEROCK:  For the documents concerning Mr.

18   Cohen's age.

19              THE COURT:  What documents?  You mean documents other

20   than ESI?

21              MR. STONEROCK:  Yes, all documents including ESI, that

22   is correct.

23              THE COURT:  What other documents would there be about

24   his age other than ESI or in his personnel file?

25              MR. STONEROCK:  Your Honor, I don't know the answer to
```

I1Q7COHC

1    that.

2          MR. BURNS:  Your Honor, this is Jason Burns for

3    defendants.  We're not aware of any documents -- certainly not

4    in hard copy -- that would exist beyond a time period shortly

5    after his resignation, although we understand that with respect

6    to ESI the court has ordered documents to be produced through

7    March 1, 2017.

8          THE COURT:  OK, good.  So I think we are covered

9    there.  Good luck, counsel, and have a great weekend.  Thanks

10   so much.

11                            - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25